COLLINS *v.* KENT STORAGE CO.

1. WAREHOUSEMEN—LIENS—WAIVER.

A warehouse company, by making deliveries of flour to the purchaser without claiming storage charges or any lien for advancements, and by delivering to him a warehouse receipt for a second purchase of flour without noting thereon any claim for storage charges or advancements, as required by 2 Comp. Laws 1915, § 6564, subds. *e* and *i*, *held*, to have waived the lien for said claims if any existed.

2. SAME—DELIVERIES—FAILURE TO DELIVER.

Where a warehouse company knew that plaintiff had purchased flour from a flour company and paid cash therefor, it could not excuse failure to deliver said flour stored in its warehouse on the ground that a member of the flour company had forbidden it to make deliveries of flour except on his order.

3. SAME—GARNISHMENT—FAILURE TO DELIVER.

Nor could it refuse to make deliveries to plaintiff on the ground that garnishee process had been served on it to cover flour stored with it for account of the flour company.

4. SAME—FAILURE TO RETURN RECEIPT NOT GROUND FOR REFUSAL TO COMPLETE DELIVERY WHERE DELIVERY HAD BEEN MADE ON 'PHONE ORDERS.

Refusal of defendant warehouse company to deliver to plaintiff flour purchased by him from a flour company storing it in its warehouse, on ground of failure to return receipt and produce written order, *held*, not justified, where part of flour purchased had been delivered to plaintiff in accordance with custom on 'phone orders or standing orders, and it did not appear that plaintiff was not ready to give whatever receipts defendant and the statute (2 Comp. Laws 1915, § 6570, subd. *c*) required.

5. SAME—JUDGMENT FOR FULL VALUE ERRONEOUS WHERE WAREHOUSEMAN HAD CLAIM FOR STORAGE AND ADVANCEMENTS ONLY.

In replevin by the purchaser of flour stored in defendant

company's warehouse, in which defendant simply claimed a lien on the flour for storage and advancements, judgment for defendant, who waived return, for the full value of the flour was erroneous, in the absence of any showing that its charges amounted to a sum equal to its value (3 Comp. Laws 1915, § 13104).

6. SAME—EVIDENCE—BURDEN OF PROOF.
    In said proceedings defendant *held*, not to have discharged the burden imposed upon it by 2 Comp. Laws 1915, § 6570, to justify its refusal to deliver said flour to plaintiff.

Error to Kent; Vanderwerp (John), J., presiding. Submitted June 3, 1924. (Docket No. 11.) Decided July 24, 1924. Rehearing denied October 6, 1924.

Replevin by Stephen W. Collins, doing business as the Collins Bakeries, against the Kent Storage Company for the possession of certain flour. Judgment for defendant. Plaintiff brings error. Reversed.

*Rolland J. Cleland,* for appellant.

*Clare J. Hall,* for appellee.

BIRD, J. Plaintiff operates a retail bakery in the city of Grand Rapids. Defendant conducts a storage warehouse in the same city. On February 2, 1921, plaintiff purchased from W. S. Canfield Flour Company, a copartnership, dealing in flour in Grand Rapids, 100 barrels of Occident flour at $9 per barrel, and paid for it. The following order was given for it:

"THE COLLINS BAKERIES,
    Main Office Grand Rapids, Mich.,
    304 Gilbert Bldg.
                        "Date 2-3-191.          No.
    "I order the following supplies for store No.......
located at.......... city.......... state........
100 bbl. Occident in ⅛'s paper delivered at Kent Storage Co., this city. At $9.00 per bbl. I to assume

storage charges there after February 15, 1921.    De-
livery to be made to me on Kent Co. 2-3-1921.
                              "Yours truly,
                                   "BARKER BAKERY,
                                   "S. W. COLLINS,
                                             Manager.
"Ordered from W. S. Canfield Flour Co.
"Order by S. W. C."

The following day plaintiff ordered by 'phone from
the defendant 40 barrels of the flour, and it was de-
livered to him and he receipted for it.    On February
9th he ordered by 'phone 30 barrels, and this was
delivered and receipted for.    Later he received 4
barrels, which made 74 barrels he received out of the
first lot of 100 barrels which he purchased.

On February 14th he ordered a second lot of 100
barrels of Occident flour from W. S. Canfield Flour
Company, and paid $900 for the same.    For this lot
he received the following warehouse receipt:

"Cor. Front & G. R. & I. Ry.
"Grand Rapids, Mich., 2-14-21; Room...Section...
Lot No. 3745.
"Received of W. S. Canfield for account of Collins
Bakeries 800 bags (⅛) said to contain flour.
"Mark.......... Car No......... Initial........
Weight 20,000.
"Checked by C. H. S.    Rate............
                              "KENT STORAGE CO.,
                                   Per "OLMSTEAD.
"Not negotiable.
(Deliveries)   'Occident.'
Combined public and private warehouse.
Important—Bring this slip for withdrawals.
(Read conditions on other side.)"

Soon after making this second purchase he ordered,
by 'phone, 30 barrels delivered to his bakery.    This
was refused.    Plaintiff then demanded the balance of
the first lot, 26 barrels, and the whole of the second
lot, 100 barrels.    This demand was refused.    On the
following  day  he  received  a  letter  from  the  Kent

Storage Company, giving reasons for its refusal to deliver the flour:

"Grand Rapids, Mich.
"February 15, 1921.

"Mr. S. W. COLLINS,
  "The COLLINS BAKERIES,
  "304½ Gilbert Bldg.,
  "Grand Rapids, Mich.

*"Dear Sir:* Confirming our conversation on the 'phone today, we were unable to make deliveries of 'Occident Flour' from stocks in storage in our warehouse for the account of the W. S. Canfield Flour Co., on account of the fact that we received written instructions from them signed by W. S. Canfield, president, not to deliver any of their 'Tea Table' or 'Occident Flour' to anyone except on the signature of Mr. W. S. Canfield.

"We also had served on us today a 'Writ of Garnishment' by the sheriff of Kent county attaching all flour stored in our warehouse for the account of the W. S. Canfield Flour Co., all of which prevents us from making further deliveries at this time.

"This for your information.

"Very truly yours,
  "KENT STORAGE CO.,
    "Per E. R. McCOY,
      Gen. Mgr."

Plaintiff then took out a writ of replevin, seized the 126 barrels, and transferred the same to his own warehouse. The case was tried out by the court without the aid of a jury. The trial court found plaintiff was not entitled to the possession of the flour because he did not tender a written order with the receipt, nor tender the receipt, and because he did not tender nor offer to pay any storage charges. Also on account of the garnishee proceedings which were mentioned in defendant's letter. The plaintiff assigns error.

The testimony shows that the W. S. Canfield Flour Company was dealing extensively with the Kent Storage Company, and that the flour company was in-

debted to the storage company for advancements and storage charges, and that from time to time the storage company prorated the Flour Company's indebtedness over the number of barrels of flour it had for them in storage. Then whenever flour was released the flour company was obliged to pay the amount of the prorate on each barrel. The testimony of the storage people and their books fairly show that the price the flour company was obliged to pay when plaintiff bought these two lots of flour was $7.50 per barrel. The flour company paid the defendant each time $750 after it received the orders from plaintiff.

Following the first purchase defendant acknowledged possession of the flour for plaintiff's account by delivering to him 40 barrels on a telephone order. Later 30 barrels were delivered on plaintiff's telephone order. Still later 4 barrels. No charges for advancements or storage were made or demanded on these deliveries. The second purchase was evidenced by a nonnegotiable warehouse receipt. No deliveries had been made on this purchase. We think it is clear that plaintiff was the owner of this flour. He purchased it from the flour company and paid for it, and the storage company, by delivering 74 barrels of the first lot and giving a warehouse receipt for the second lot, recognized his ownership of it. At the time plaintiff demanded the 126 barrels of flour the storage company did not claim to own it, neither did the flour company. We, therefore, assume that plaintiff was the owner of the flour, and the storage company simply claimed a lien on it for storage charges and advancements.

As plaintiff was the owner he claimed the right of possession. When defendant delivered 74 barrels of the first 100 barrels without demanding any storage charges or claiming any lien for advancements to the flour company, plaintiff had a right to assume that

there were no charges for him to pay, and when it gave him a warehouse receipt for 100 barrels of flour with no claim noted thereon for storage charges and advancements, that there were none.   The statute requires a warehouseman to make a claim on the warehouse receipt for both of these items, if they exist (2 Comp. Laws 1915, § 6564, subds. (e) and (i). There being no claim indorsed on the warehouse receipt for either advancements or storage charges, plaintiff had a right to infer that there were none, but that if there were that defendant had waived its lien on the same.   The correctness of this view is further shown by the fact that when plaintiff demanded the entire balance of 126 barrels, two reasons only were given why it refused to deliver it, and neither reason was that there were storage charges or advancements.

The reasons assigned in the letter for its refusal to deliver the flour were:

(a) That Canfield of the flour company instructed it not to permit any Occident flour to go out except on his order.   This did not furnish any legal excuse. The Canfield Flour Company had sold this flour and received its pay therefor and had delivered it to defendant for plaintiff.   Neither Canfield individually nor as a partner had any right to hold up plaintiff's flour.

(b) That a garnishee process by which all the flour in the warehouse for the account of W. S. Canfield Flour Company had been held up.   This garnishee process had no reference to flour which the flour company had sold to plaintiff, and received their pay for, and had ordered defendant to deliver to plaintiff. Defendant knew this, and when it made its return to the garnishee process it made no mention of this 126 barrels belonging to plaintiff.   This would furnish no legal reason for its refusal.

Defendant gave plaintiff to understand by its letter

of refusal that but for these two reasons it would continue to deliver the flour as it had hitherto done. This also strengthens the view that it had no charges at that time for storage and advancements, but that these items, whatever they were, were being taken care of by the flour company.

Some other reasons for its refusal to deliver the flour were given after the litigation began.    It is said that under the statute and its rules defendant was not bound to deliver except upon a return of the receipt and a written order.    We do not think this can avail the defendant.    The manager of the defendant company testified that sometimes it was their custom to permit deliveries to be made upon 'phone orders or upon standing orders.    The testimony shows they did this with plaintiff.    The first lot of 100 barrels appeared to be on standing order, because a notation was made upon the receipt given for one lot of flour by the warehouseman, of the words "standing order." So far as the record shows the plaintiff was ready and willing to give whatever receipts the defendant and the statute required (§ 6570, subd [c]), in order to have the property delivered, and defendant understood that and never made any claim of this character until after the litigation began, and does not now claim that plaintiff refused to receipt for the flour. Neither is it shown that any sum was demanded of plaintiff.    By its conduct and because of its failure to note on the warehouse receipt that it claimed storage charges and advancements, the defendant waived its lien on the flour for these charges if it had any. And by its conduct and manner of dealing it waived its lien on the balance of the first 100 barrels if it had any.

We are impressed that there would have been no refusal to deliver the flour had it not been for the trouble which arose between W. S. Canfield and his copartners, resulting in a receivership.    Canfield got

the impression that his copartners were not dealing fairly by him.    In an attempt to strengthen his hold on the affairs of the firm he gave the order in question to defendant, which started this litigation.    It would not be out of place to say that very much more of the controversy between Canfield and his partners was gone into in this suit than was admissible.    Most of the testimony relating to their troubles was immaterial and should have been rejected.

Another serious objection to the judgment occurs to us, in that defendant waived the return of the property and took judgment for the full value of the flour.    Under no view of the case could defendant take judgment for the full value unless it was the general owner of the flour, or unless its charges for storage and advancements amounted to the sum equal to its value (3 Comp. Laws 1915, § 13104).    The sum which defendant could take judgment for under its own theory was the amount owing to it for storage charges and advancements for which it had a lien on the flour.

The uniform warehouse act provides that:

"In case the warehouseman refuse or fail to deliver the goods in compliance with the demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal." 2 Comp. Laws 1915, § 6570, subd. (c).

In the case before us that duty rested upon defendant, and we do not think it has discharged it. We think the trial court was in error in holding that plaintiff was not entitled to the possession of the flour at the time it was replevied.

The judgment of the trial court is reversed and a new trial ordered, with costs to plaintiff.

CLARK, C. J., and MCDONALD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.